IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY STOCKHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Case No. 20-cv-08750-MMC<br><br>**ORDER GRANTING WELLS FARGO & COMPANY'S MOTION TO DISMISS CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT PURSUANT TO RULE 23.1** |

Before the Court is nominal defendant Wells Fargo & Company's ("Wells Fargo" or "the Company") motion, filed June 22, 2021, to dismiss the Verified Consolidated Shareholder Derivative Complaint pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. (See Dkt. No. 59.) Defendants Celeste A. Clark ("Clark"), Theodore F. Craver Jr. ("Craver"), Wayne M. Hewett ("Hewett"), Donald M. James ("James"), Maria R. Morris ("Morris"), Charles H. Noski ("Noski"), C. Allen Parker ("Parker"), Richard B. Payne Jr. ("Payne"), Juan A. Pujadas ("Pujadas"), Ronald L. Sargent ("Sargent"), Charles W. Scharf ("Scharf"), John R. Shrewsberry ("Shrewsberry"), Timothy J. Sloan ("Sloan"), and Suzanne M. Vautrinot ("Vautrinot") (collectively, "Individual Defendants") have joined in Wells Fargo's motion. (See Dkt. Nos. 60, 62-64, 68.) Plaintiffs Timothy Himstreet, the Montini Family Trust, and Clyde V. Cotton have filed opposition (see Dkt. No. 69), and Wells Fargo has filed a reply in which the Individual Defendants have joined (see Dkt. Nos. 72-76). The Court, having considered the papers filed in support of and in opposition to the motion, rules as follows.[1]

---

[1] By orders filed October 12, 2021, the Court granted plaintiffs' motion to file supplemental exhibits (see Dkt. No. 79) and took the matter under submission (see Dkt.

## BACKGROUND

Plaintiffs, who assert they are shareholders of Wells Fargo, allege that, in response to "unlawful and pervasive sales practices that led to consumer abuses spanning nearly two decades" (see Compl. ¶ 3), Wells Fargo, on February 2, 2018, entered into a regulatory consent order with the Federal Reserve System ("FRS") and, thereafter, on April 20, 2018, entered into "two coordinated consent orders" with, respectively, the Consumer Financial Protection Bureau ("CFPB") and the Office of the Comptroller of the Currency ("OCC") (see Compl. ¶ 7). Plaintiffs allege the FRS consent order required Wells Fargo to "improve Board oversight and remediate Wells Fargo's compliance and operational risk management policies and procedures," and that the CFPB and OCC consent orders similarly required Wells Fargo to "strengthen its compliance and risk management." (See Compl. ¶ 7.) Plaintiffs further allege that the FRS consent order imposed an asset cap whereby Wells Fargo "would be restricted from growing any larger than its total asset size as of the end of 2017" (see Compl. ¶ 91), and that the CFPB and OCC consent orders imposed on Wells Fargo $1 billion in fines (see Compl. ¶ 7).

According to plaintiffs, the Individual Defendants subsequently "publicly represented that Wells Fargo had implemented and would continue to implement meaningful corporate reforms, and that their reform efforts were in compliance with the regulatory consent orders," which "representations . . . were false." (See Compl. ¶¶ 8-9.) In particular, plaintiffs allege that, despite Wells Fargo's obligations to meaningfully address its risk and compliance programs, such programs "continued to be woefully deficient" (see Compl. ¶ 9) and that Wells Fargo was so advised by the above-referenced regulatory agencies (see Compl. ¶¶ 219-20). In particular, plaintiffs allege that on March 4, 2020, the House Committee on Financial Services reported that "Wells Fargo had repeatedly failed to satisfy the terms of the consent orders" (see Compl. ¶ 218), that "the

---

No. 80).

risk management plans that Wells Fargo submitted to the FRS . . . were 'materially incomplete' . . . despite the Company having received constant feedback and guidance from the FRS" (see Compl. ¶ 219), that "Wells Fargo was informed that its plan [submitted to the FRS] was 'riddled with errors and discrepancies, such as incorrect progress indicators for deliverables and illogical timeframes for achieving future milestones'" (see Compl. ¶ 219), that "the OCC [had] admonished the Company's 'very slow' progress," most of which "appear[ed] to come after repeated pressure by the regulators, calling out missed deadlines, failed validations, and poor quality action plans" (see Compl. ¶ 220), and that "the Company's risk management infrastructure remain[ed] broken and woefully inadequate to prevent future harm to consumers" (see Compl. ¶ 221). In addition, plaintiffs allege that, on March 10, 2020, Scharf testified before the House Committee on Financial Services and "admitted that Wells Fargo ha[d] 'not yet done what is necessary to address [its] shortcomings,' noting that the Company's 'culture was broken.'" (See Compl. ¶ 14.)

Based on said allegations, plaintiffs, seeking to proceed derivatively on behalf of Wells Fargo, bring claims against certain of the Individual Defendants for violation of section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") (see Compl. ¶¶ 284-88), and against all Individual Defendants for breach of fiduciary duty (see Compl. ¶¶ 289-96), waste of corporate assets (see Compl. ¶¶ 297-300), and unjust enrichment (see Compl. ¶¶ 301-04). Plaintiffs also assert a claim against Sloan and Shrewsberry for contribution under sections 10(b) and 21D of the Exchange Act. (See Compl. ¶¶ 305-08.)

**DISCUSSION**

Pursuant to Rule 23.1, a shareholder filing a derivative action to "enforce a right that the corporation . . . has failed to enforce" must "state with particularity any effort . . . to obtain the desired action from the directors . . . and the reasons for . . . not making the effort." See Fed. R. Civ. P. 23.1. "Although Rule 23.1 supplies the pleading standard for assessing allegations of demand futility, the substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose

behalf the plaintiff is seeking relief." Rosenbloom v. Pyott, 765 F.3d 1137, 1148 (9th Cir. 2014). Here, the parties agree Wells Fargo is incorporated in Delaware.

The Delaware Supreme Court recently adopted a three-part test as "the universal test for assessing whether demand should be excused as futile." United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg, 262 A.3d 1034, 1058 (Del. 2021). Under said test, courts, when evaluating allegations of demand futility, must ask, "on a director-by-director basis," see id. at 1059, as well as on a "claim-by-claim basis," see Oswald v. Identiv, Inc., 2018 WL 1783838, at *2 (N.D. Cal. Apr. 13, 2018), aff'd sub nom. Oswald on Behalf of Identiv, Inc. v. Humphreys, 806 F. App'x 577 (9th Cir. 2020), the following:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

Zuckerberg, 262 A.3d at 1059. "If the answer to any of the questions is 'yes' for at least half of the members of the demand board[2], then demand is excused as futile." Id.

In the instant case, Wells Fargo moves to dismiss the complaint on the asserted ground that plaintiffs have failed to make a pre-suit demand on the Board and have failed to plead, with the particularity required by Rule 23.1, facts sufficient to excuse plaintiffs' failure to make such demand on the Board. In response, plaintiffs point to their allegations that a demand would have been "futile" (see Compl. ¶ 239) because, according to plaintiffs, at least half of the members of the Demand Board face a

---

[2] The term "demand board" refers to the board of directors as comprised at the time at which a complaint is filed. See Zuckerberg, 262 A.3d at 1046. Here, plaintiffs allege that defendants Clark, Craver, Hewett, James, Morris, Noski, Payne, Pujadas, Sargent, Scharf, Vautrinot, and nondefendants Steven D. Black and Mark A. Chancy were the directors at the time at which plaintiffs filed the instant complaint ("Demand Board"). (See Compl. ¶ 239.)

4

substantial likelihood of liability for violating section 14(a) of the Exchange Act and breaching their fiduciary duties.

In resolving that issue, the Court first turns to plaintiffs' federal claims, specifically, Counts I and V.

### A. Count I — Violation of Section 14(a) of the Exchange Act

Section 14(a) of the Exchange Act "makes it unlawful to solicit shareholder approval by use of a proxy statement that does not comply with the rules and regulations of the Securities Exchange Commission," see In re Wells Fargo & Co. S'holder Derivative Litig., 282 F. Supp. 3d 1074, 1101 (N.D. Cal. 2017) (citing 15 U.S.C. § 78n), and Rule 14a–9 "prohibits proxy statements that are false or misleading with regard to any material facts at the time they are issued and in light of the circumstances under which they are made," see id. (citing 17 C.F.R. § 240.14a–9); see also City of Birmingham Relief & Ret. Sys. v. Hastings, 2019 WL 3815722, at *11 (N.D. Cal. Feb. 13, 2019) (noting section 14(a) "seeks to prevent management or others from obtaining authorization for corporate actions by means of deceptive or inadequate disclosures in proxy solicitations"). To plead a claim under section 14(a) based on a violation of Rule 14a-9, a plaintiff "must allege that: (1) defendants made a material misrepresentation or omission in a proxy statement; (2) with the requisite state of mind; and (3) that the proxy statement was the transactional cause of harm of which plaintiff complains." In re Diamond Foods, Inc. Derivative Litig., 2012 WL 1945814, at *4 (N.D. Cal. May 29, 2012), aff'd, 575 F. App'x 716 (9th Cir. 2014). "A state of mind of negligence will suffice as to the degree of culpability." Id.

Here, plaintiffs allege that seven members of the Demand Board as well as Sloan, a former Board member, "negligently issued" in Wells Fargo's proxy statement filed March 14, 2018 ("2018 Proxy") "materially false and misleading written statements" pertaining to (1) "a proposal . . . to reelect the members of the Board" and (2) "two stockholder proposals" demanding, respectively, that (a) Wells Fargo "engage independent experts or resources to reform its executive compensation policy with social

5

responsibility" and (b) the Board "prepare a report on the Company's employee incentive compensation and the risk of material losses" (see Compl. ¶ 286), after which the stockholders voted in favor of reelecting the Board members and voting against the two stockholder proposals (see Compl. ¶ 287).

In particular, plaintiffs allege the following statements, made in an introductory section, were false and misleading:

> [T]he Board and senior management are committed to satisfying the requirements of the [FRS] consent order. . . . As part of our transformation, Wells Fargo is committed to a thorough review of the products we offer and the internal procedures we use to get things done.  When we uncover anything that may be questionable, we address it and remediate any customers who may have been financially harmed.  To strengthen Wells Fargo's corporate culture, we are listening to our team members and inviting outside reviewers to help identify enhancements so we can make sure our culture is consistent across the organization.

(See Compl. ¶ 208.)

Next, with respect to the first of the two stockholder proposals, plaintiffs allege the following statements were false and misleading:

- Our executive compensation program is designed to pay for performance and encourage long-term shareholder value;
- In evaluating executive performance and determining executive compensation, the [Board's Human Resources Committee] considers a variety of factors, including ethical considerations, diversity and inclusion, executive accountability, and other social responsibility issues;
- The Board's Human Resources Committee is comprised of independent directors and seeks independent advice; and
- We are committed to paying our team members fairly and consistent with social responsibility.

(See Compl. ¶ 211.)

Lastly, with respect to the second of the two stockholder proposals, plaintiffs allege the following statements were false and misleading:

- Our Company already undertakes incentive compensation risk reviews responsive to the proposal's concerns through its Incentive Compensation Risk Management (ICRM) program;
- The Board's Human Resources Committee oversees the ICRM program, which we have significantly expanded and strengthened in recent years; and

6

- Through the ICRM program, we review the incentive compensation arrangements of all incentive-eligible roles across our Company for a broad range of actual and potential financial, reputational, and regulatory risks.

(See Compl. ¶ 215.)

In seeking to excuse their lack of demand with respect to their section 14(a) claim, plaintiffs allege that at least half of the members of the Demand Board, specifically, Clark, Craver, James, Morris, Pujadas, Sargent, and Vautrinot, face a "substantial likelihood of liability" for "the negligently made statements in the materially misleading 2018 Proxy" referenced above. (See Compl. ¶¶ 247, 252, 259, 263, 273, 278, 282.)

Defendants, noting plaintiffs expressly base their section 14(a) claim "solely on negligence" and disclaim reliance on "any reckless or knowing conduct by or on behalf of defendants" (see Compl. ¶ 285), point to Wells Fargo's charter, titled Restated Certificate of Incorporation (see Mot., Ex. D at 0), and, in particular, to a clause therein that provides, in relevant part: "A director of the corporation shall not be personally liable to . . . the corporation or its stockholders . . . for breach of fiduciary duty . . . except for . . . acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law" (see Mot., Ex. D at 7-8).[3] As defendants further point out, the clause tracks the language of Delaware General Corporation Law, and, in particular, section 102(b)(7). See 8 Del. C. § 102(b)(7) (empowering Delaware corporations to contain in their certificates of incorporation "[a] provision eliminating or limiting the personal liability of a director . . . for breach of fiduciary duty . . . provided that such provision shall not eliminate or limit the liability . . . for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law").

In their opposition, albeit as noted by defendants "relegate[d] to a footnote" (see Reply at 13:11), plaintiffs, citing three out-of-circuit cases, argue "exculpation for

---

[3] Although not expressly requested, the Court takes judicial notice of the charter (see Mot., Ex. D). See In re Baxter Int'l, Inc. S'holders Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995) (noting courts, in deciding motion to dismiss, may take judicial notice of certificate of incorporation); see also Fed. R. Evid. 201 (providing court "may take judicial notice on its own").

violations of the federal securities laws would be against federal public policy" (see Opp. at 21 n.14). The cited cases are, however, distinguishable as none addressed an exculpation clause expressly permitted under state corporate law. See Cohen v. Viray, 622 F.3d 188, 195 (2d Cir. 2010) (finding indemnification clause in settlement agreement impermissibly usurped SEC's "sole[]" statutory authority to both enforce, and grant exemption under, section 304 of the Sarbanes-Oxley Act); Baker, Watts & Co. v. Miles & Stockbridge, 876 F.2d 1101, 1108 (4th Cir. 1989) (finding no implied right to indemnification under section 12(2) of the Securities Act of 1933; further finding indemnification against public policy where plaintiff's violation had been adjudicated in earlier action); Credit Suisse First Bos., LLC v. Intershop Commc'ns AG, 407 F. Supp. 2d 541, 546-49 (S.D.N.Y. 2006) (discussing cases where indemnification found to violate public policy under differing circumstances and statutes).

Moreover, numerous courts, in considering federal securities claims, including claims brought under section 14(a), have upheld application of exculpation clauses adopted pursuant to section 102(b)(7), and, although that statute was enacted over 35 years ago, see S.B. 533, 133d Gen. Assemb. (Del. 1986), there are, to the Court's knowledge, no cases holding to the contrary. See, e.g., City of Detroit Police & Fire Ret. Sys. on Behalf of NiSource Inc. v. Hamrock, 2021 WL 877720, at *5 (D. Del. Mar. 9, 2021) (finding, as to negligence-based section 14(a) claim, demand "not excused" where corporation had adopted section 102(b)(7) charter provision; collecting cases "that have expressly applied 102(b)(7) exculpation provisions to 14(a) claims"); Smith on behalf of Zion Oil & Gas, Inc. v. Carrillo, 2019 WL 6328033, at *8 (D. Del. Nov. 26, 2019) (declining to excuse demand; finding negligence-based section 14(a) claims "exculpated" under company's section 102(b)(7) charter provision); Pickett v. Gorevic, 2021 U.S. Dist. LEXIS 63135, at *31, *69 (S.D.N.Y. Mar. 26, 2021) (same); City of Birmingham Relief & Ret. Sys. v. Hastings, 2019 WL 3815722, at *9 (N.D. Cal. Feb. 13, 2019) (holding, where company has adopted section 102(b)(7) charter provision and plaintiff alleges defendants violated section 14(a) by making misleading statements as to their compliance with the

8

disclosure requirements of 26 § U.S.C. 162(m), plaintiff "must plead particularized factual allegations that support the inference that the disclosure violation was made in bad faith, knowingly or intentionally").

Consequently, given that Wells Fargo's charter exempts directors from liability for negligent conduct, and plaintiffs do not allege any other conduct for which the above-referenced seven directors may be held liable under section 14(a), plaintiffs have failed to show those directors would face a "substantial likelihood of liability" for violating section 14(a), and, accordingly, plaintiffs have failed to show their failure to make a demand is excused as futile. See Guttman v. Huang, 823 A.2d 492, 501 (Del. Ch. 2003) (explaining, where a "corporate charter contains an exculpatory charter provision authorized by 8 Del. C. § 102(b)(7). . . . , then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts") (emphasis in original).

In any event, even assuming the exculpation clause is unenforceable, plaintiffs, as set forth below, have failed to allege an actionable false or misleading statement, and, for that separate reason, have failed to show the above-referenced directors face a substantial likelihood of liability under section 14(a).

"To state a claim under § 14(a) and SEC Rule 14a-9, the plaintiff must allege that the proxy statements contained either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading." Ocegueda on behalf of Facebook v. Zuckerberg, 526 F. Supp. 3d 637, 651 (N.D. Cal. 2021). "To be misleading, a statement must be capable of objective verification." Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1275 (9th Cir. 2017). For example, "vague, generalized assertions of corporate optimism or statements of mere puffing are not actionable material misrepresentations under federal securities laws" because, as explained by a judge in this district, "no reasonable investor would rely on such statements." See In re Facebook, Inc. Sec. Litig., 405 F. Supp. 3d 809, 835-36 (N.D. Cal. 2019) (characterizing

as "inactionable corporate puffery" defendant's statement that "[w]e've worked hard to make sure that we comply with [the FTC order]"; collecting cases holding statements regarding "general legal compliance" too vague to be actionable); see also Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003) (holding "generalized, vague and unspecific assertions . . . constitut[ed] mere puffery upon which a reasonable consumer could not rely").

  Here, as noted, plaintiffs cite to statements that the Board was "committed" to "satisfying the requirements of the [FRS] consent order," to "a thorough review" of Wells Fargo's products and internal procedures, and to "paying [its] team members fairly and consistently with social responsibility." (See Compl. ¶¶ 208, 211.) Such statements of an aspirational nature, however, are not capable of objective verification, and, consequently, are not actionable. See Retail Wholesale, 845 F.3d at 1276 (finding it "untenable" to interpret statements such as "we make ethical decisions" as capable of being "measured for compliance . . . with an ethical code"; noting to hold otherwise "could turn all corporate wrongdoing into securities fraud").

  Similarly, such statements as "[w]hen we uncover anything that may be questionable, we address it and remediate any customers who may have been financially harmed," and "we are listening to our team members" are essentially "generalized, vague and unspecific," and thus likewise inactionable. See Hutton v. McDaniel, 264 F. Supp. 3d 996, 1018 (D. Ariz. 2017) (holding statement that board "regularly reviews" various operations not actionable; characterizing statement as "generalized, vague, and unspecific").

  Plaintiffs' citation to statements arguing against the need for the stockholders' proposed changes likewise is, as discussed below, unavailing.

  First, statements countering the need to bring in outside experts to revise the Company's executive compensation policy, such as "[the Board's Human Resources Committee] considers a variety of factors, including ethical considerations, diversity and inclusion, executive accountability, and other social responsibility issues" (see Compl. ¶

211), include an implied commitment to shared values and, as with the above-referenced statements, lack sufficient specificity to be actionable. See, e.g., Retail Wholesale, 845 F.3d at 1275 (finding statements that "emphasize a desire to commit to certain shared values" not capable of objective verification and thus not actionable); Glen Holly, 352 F.3d at 379 (holding statements generally describing "high priority" company placed on product development "do not state an actionable fraud or negligent misrepresentation claim").

Similarly, in countering the need for a report on employee incentive compensation and associated risk, statements such as "[o]ur Company already undertakes incentive compensation risk reviews responsive to the proposal's concerns through its Incentive Compensation Risk Management (ICRM) program" (see Compl. ¶ 215), i.e., statements expressing a commitment to shared values, are too general to be capable of objective verification and, to the extent any of those statements might be deemed to contain facts, e.g., that the Board "oversees the ICRM program," has "expanded and strengthened [it] in recent years," and through it "review[s] the incentive compensation arrangements of all incentive-eligible roles," plaintiffs do not allege any facts to the contrary.[4]

In sum, for all of the reasons stated above, plaintiffs have failed to plead, with the particularity required by Rule 23.1, that at least half of the members of the Demand Board face a substantial likelihood of liability for violating section 14(a), and, consequently, plaintiffs have failed to show demand would have been futile. Accordingly, demand will not be excused, and plaintiffs' section 14(a) claim will be dismissed without leave to amend.[5]

---

[4] Although plaintiffs in their opposition assert the FRS consent order "informed the Board that its incentive compensation practices were not properly aligned with risk management objectives" (see Opp. at 22:5-6), the FRS order made no such finding (see Mot., Ex. A).

[5] The Court, having reviewed the 2018 Proxy for any additional statements that might be alleged, has found no statements that could be deemed actionable for purposes of pleading a viable section 14(a) claim.

## B.  Count V — Contribution Under Sections 10(b) and 21D of the Exchange Act

Plaintiffs' fifth claim, brought against Sloan and Shrewsberry only, is based on allegations that "[t]he Company, along with defendants Sloan and Shrewsberry, is named as a defendant in . . . securities class actions" and that "[i]f and when the Company is found liable . . . the Company's liability will be in whole or in part due to defendants Sloan and Shrewsberry's willful and/or reckless violations of their obligations as officers and directors of the Company." (See Compl. ¶ 306.)  In light thereof, plaintiffs further allege, "Sloan and Shrewsberry are liable under [section 10(b) of the Exchange Act,] 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act."  (See Comp. ¶ 308.)

As noted, plaintiffs' fifth claim is asserted only against Sloan and Shrewsberry, not against any member of the Demand Board (see Mot. at 18 n.10), and, consequently, plaintiffs have failed to show that at least half of the members of the Demand Board face a substantial likelihood of liability under Count V.  See, e.g., Advanced Advisors G. P. v. Berman, 2014 WL 12772264, at *7 (C.D. Cal. Sept. 16, 2014) (dismissing contribution claim for failure to plead demand futility where only one of six board members potentially could be held liable; noting "courts have determined that demand is not excused as to claims arising from a companion securities class action where the plaintiff failed to plead that a majority of the board faced a substantial likelihood of liability in the securities class action").  Indeed, as to such claim, plaintiffs, in neither their complaint nor their opposition, address the issue of demand futility in any manner, let alone offer any reasons, with particularity or otherwise, why demand would have been futile with respect thereto.

Moreover, when a claim is "contingent upon the outcome of a separate, pending lawsuit, courts generally dismiss [it] as premature."  See DiBattista v. Greco, 2021 WL 327399, at *7 (D. Del. Jan. 31, 2021), adopted, 2021 WL 5061720 (D. Del. Feb. 17, 2021) (dismissing contribution claim brought under sections 10(b) and 21D due to lack of

ripeness; noting under section 21D, "[p]laintiff only has a right to contribution if final judgment is entered" and a determination that defendants "knowingly committed a violation of the securities laws" has been made).

Accordingly, plaintiffs having failed to plead, with the particularity required by Rule 23.1, demand would have been futile, demand will not be excused, and plaintiffs' contribution claim will be dismissed without leave to amend.

### C.     Counts II, III, and IV — State Law Claims

The Court's jurisdiction over plaintiffs' state law claims, specifically, Counts II, III, and IV, is supplemental in nature. See 28 U.S.C. § 1367(a). Where a district court "has dismissed all claims over which it has original jurisdiction," such court may decline to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3). In this instance, as the case remains at the pleading stage, there are no apparent considerations weighing in favor of retaining jurisdiction over the state law claims, the Court finds it appropriate to decline to exercise supplemental jurisdiction over the state law claims.

Accordingly, plaintiffs' state law claims will be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Wells Fargo's motion to dismiss pursuant to Rule 23.1 is hereby GRANTED, and the complaint is hereby DISMISSED as follows:

1. Counts I and V are hereby DISMISSED;

2. Counts II, III, and IV are hereby DISMISSED without prejudice to refiling said claims in state court.

**IT IS SO ORDERED.**

Dated: February 4, 2022

MAXINE M. CHESNEY
United States District Judge